# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AMANDA BALSCHMITER, individually
and on behalf of all others similarly
situated,

   Plaintiff,

  v.

TD AUTO FINANCE, LLC,

   Defendant,

Case No. 2:13-cv-01186

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
(FED. R. CIV. P. 23)**

The Honorable J.P. Stadtmueller

## I. INTRODUCTION

Plaintiff Amanda Balschmiter ("Plaintiff") seeks certification of a class consisting of non-customers of Defendant TD Auto Finance, LLC ("TDAF"), who received automated telephone calls on their cellular telephones from TDAF.  Plaintiff alleges that these calls violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.  As Judge Easterbrook recently observed, class certification is the norm in TCPA cases.  *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under [the TCPA]. . . .").  That observation is even more apt where, as here, Plaintiff presents a precise, circumscribed class consisting solely of non-customers of TDAF who owe TDAF no money and have no business relationship with TDAF whatsoever.

This case is the very embodiment of the many TCPA class certification decisions in this Circuit.  As detailed below, TDAF's own records show that Plaintiff, like other non-customers of TDAF in the proposed class, received automated calls from TDAF on her cell phone.  Plaintiff's expert has developed an objective, mechanical, and reliable method of ascertaining the members of the proposed class by using a list, provided by TDAF in discovery, of all calls made by TDAF on its automated dialing systems during the class period.  The common question of whether TDAF violated the TCPA in making these automated calls to non-customers predominates.  The answer to that common question will be the same for all class members because the TCPA does not permit a defendant to obtain prior express consent to autodial *non-customers* at all.  Similarly, proceeding with these claims as a class action, as in many TCPA cases, is superior to conducting thousands of repeated individual trials based on identical evidence of what TDAF did and knew.

In this brief and accompanying evidence, Plaintiff demonstrates that she has standing; that the proposed class is ascertainable; that she satisfies that Rule 23(a) requirements of

numerosity, commonality, typicality, and adequacy; and that she satisfies that Rule 23(b)(3) requirements of predominance and superiority. For these reasons, Plaintiff respectfully seeks certification under Rule 23(b)(3) of a class of all non-customers who received on their cell phones autodialed or prerecorded calls from TDAF.

In the alternative, Plaintiff seeks certification under Rule 23(b)(2) or Rule 23(c)(4). Certification of the proposed TCPA class under either approach would further Rule 23's dual goals of efficiency and fairness.

Plaintiff also requests that the Court appoint her as Class Representative. Lastly, Plaintiff requests that her counsel Lieff Cabraser Heimann & Bernstein, LLP, Meyer Wilson Co., LPA, and Cullen Weston Pines & Bach LLP, each be appointed Class Counsel.

## II. THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA")

Congress enacted the Telephone Consumer Protection Act, 7 U.S.C. § 227 ("TCPA") to prevent autodialed and prerecorded calls by companies that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012). Unlike many federal statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit "Congressional Findings." 105 Stat. 2394, §§ 10, 12, 14 (notes following 47 U.S.C. § 227). *Mims* explicitly cited these Congressional Findings in noting that "'automated or prerecorded telephone calls' . . . were rightly regarded by recipients as 'an invasion of privacy.'" *Id.* (citing 105 Stat. 2394). Accordingly, Congress found that:

> **Banning such automated or prerecorded telephone calls** to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, **is the only effective means of protecting telephone consumers** from this nuisance and privacy invasion.

*Id.* at § 14 (emphasis added). Indeed, as the United States Supreme Court recently held in a different legal context, "Modern cell phones are not just another technological convenience.

With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. California*, __ U.S. __ (slip op. at 28, June 25, 2014) (citing *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

Congress vested the Federal Communication Commission ("FCC") with authority to issue regulations implementing the TCPA. 47 U.S.C. § 227(b)(2). The FCC recently described the purpose and scope of the TCPA as follows:

> The Telephone Consumer Protection Act (TCPA), Pub.L.102-243, 105 Stat. 2394, prohibits making calls to cellular telephones using an automatic telephone dialing system (also known as an autodialer) or an artificial or prerecorded voice, except for emergency purposes or with the "prior express consent of the called party." . . . Congress enacted this prohibition to protect telephone users "from unwanted communications that can represent annoying intrusions into daily life." "Congress did not expect the TCPA to be a barrier to normal, expected, and desired business communications." But Congress specifically targeted autodialed and prerecorded calls because it considered such calls to be "a greater nuisance and invasion of privacy than calls placed by 'live' persons."

Declaration of Michael J. Boyle, Jr. ("Boyle Dec."), at ¶ 2, Ex. A, Letter Brief of Federal Communications Commission ("FCC Brief") at 2-3, *Nigro v. Merchantile Adjustment Bureau, LLC*, No. 13-1362 (2d Cir. June 30, 2014) (citations omitted).

The burden is on the *calling party* – here, TDAF – to demonstrate that it obtained the prior express consent of the called party. FCC Brief at 4, fn. 2. With regard to what constitutes "prior express consent" to be called with an automated dialer, the FCC notes that the term is not defined in the statute, and thus the FCC has established "different consent criteria for different types of calls." *Id.* at 3. In the debt collection context, the FCC has consistently ruled that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at 5-6 (quoting *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43

Communications Reg. (P&F) 877, 2008 FCC LEXIS 56, 2008 WL 65485 (F.C.C.) ("2008 FCC Ruling"), at ¶ 10). Under the Hobbs Act, 28 U.S.C. § 2342, all FCC rulings are binding on this Court because the Federal Courts of Appeals have exclusive jurisdiction over challenges to FCC rulings. *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 389 n.13 (7th Cir. 2004).

## III.  FACTS

### A.  TDAF's Automated Call Practices

TDAF utilizes automated dialers to place collections calls to consumers. Boyle Dec., at ¶ 3, Ex. B, Deposition of David McCullough ("McCullough Dep."), at 29:3 – 30:7. For its automated dialer "campaigns," TDAF programs its dialers to automatically call the telephone numbers that it has placed in the "T1" through "T6" fields of its database. Boyle Dec., at ¶ 4, Ex. C, Deposition of Marcia Barnes ("Barnes Dep."), at 69:14 – 70:21. Under TDAF's policies, the "T1" through "T3" fields represent the borrower's home telephone number, work telephone number, and cellular telephone number, respectively. Boyle Dec., at ¶ 6, Ex. E, Deposition of Kate Wade ("Wade Dep."), Ex. 3, at TDAF000180. Under TDAF's policies, the "T4" through "T6" fields represent the co-borrower's (if any) home telephone number, work telephone number, and cellular telephone number, respectively. *Id.*

According to TDAF *policy*, telephone numbers associated with non-customers may only be dialed manually. Barnes Dep., at 75:15 – 77:10; 103:21 – 104:22. A customer service representative should not, according to the policy, enter any telephone number for a non-customer into the "T1" through "T6" autodialer fields. *See id.* at 77:5-8 ("If it didn't belong to the buyer or the co-buyer, it wouldn't go in the T1 through T6 fields, which means it wouldn't be dialed by the [auto]dialer. . . .")

TDAF's *practice*, on the other hand, is an entirely different matter.

TDAF produced a list of all telephone numbers that it autodialed during the class period. Boyle Dec., at ¶ 7, Ex. F. Both of the cellular telephone numbers of Plaintiff – a non-customer – appear in this list. Boyle Dec., at ¶ 8. TDAF customer Victor Loshek's account records show that a cellular telephone number belonging to Plaintiff was moved by TDAF personnel into the T1 dialer field of Mr. Loshek's account, making Plaintiff – not Mr. Loshek – receive automated calls from TDAF. Boyle Dec., at ¶ 5, Ex. D, Wade Dep., at 122:14 – 123:24.

But TDAF's failure to comply with its own policy – and the mandates of the TCPA – went far beyond just Plaintiff. For example, during the six-month period prior to May 2013, TDAF's compliance sampling showed that the correct procedures for handling cellular telephone numbers—including the procedures for ensuring that non-customer cell phones were not autodialed—were used only *41.38 percent* of the time. Wade Dep., at 55:24 – 56:12. For the customer service representatives located in Jacksonville, Florida, over that same period, the compliance by month was even lower: *35.7 percent*. *Id.* at 62:14-24. In response to these compliance numbers, TDAF *took no corrective* action and made no policy changes until October 2013—the month that Plaintiff filed this case. *See id.* at 56:17-22 ("Q. Are you aware of any changes that were made as a result of these numbers [in May 2013], changes to policies or -- or anything of that nature? A. . . . I can't say that I'm aware of any changes to the policies."); *id.* 75:14 – 76:13 (describing lack of policy changes before October 2013). Thus, despite its stated policy, TDAF maintained a systematic and classwide practice of calling non-customers on their cellular telephones. [1]

---

[1] TDAF's records likewise uniformly lack any classwide evidence supporting prior express consent to receive these automated calls. Plaintiffs sought classwide discovery to demonstrate: (1) that the Court may determine from common evidence on a classwide basis whether TDAF can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated), during the transaction that resulted in the debt owed, to make autodialed or prerecorded calls to non-customers, and (2) that, on the merits, TDAF cannot meet its burden. TDAF has not produced *any* evidence regarding whether it received prior express consent from any absent class member to make the autodialed and prerecorded calls at issue. Instead, presumably because it cannot meet its

1185386.4

## B. TDAF's Call Records

TDAF's records demonstrate TDAF's automated calling practice. TDAF produced in discovery a list of all calls made by TDAF using its automated dialing systems during the class period. Boyle Dec., at ¶ 7, Ex. F. The widespread nature of TDAF's autodialing practices is evident as TDAF robocalled 1,814,019 unique phone numbers during the class period. TDAF's outbound dial list is readily accessible and searchable.

Plaintiff retained the services of an expert to "scrub" that list of all non-cell phone numbers, thereby producing a list of all cell phone numbers autodialed by TDAF during the class period. To determine non-customers called by TDAF, Plaintiff need only compare the autodialed cell phone list with a list of all the telephone numbers TDAF's customers provided to TDAF in their credit applications. [2] Matches will be removed from the dialed cell phone list, resulting in a list of the cell numbers of only the non-customers who received calls on their cell phones. This list of numbers will then be matched by Plaintiff's expert to the names associated with those numbers, producing a list of class members. As described below, the process by which Plaintiff would generate a list of class members meets the objective criteria for ascertainability.

## C. Background of Plaintiff's Claim

On April 16, 2012, Victor Loshek purchased a 2010 Jeep Patriot from Team Blevins, LLC, a used car dealer located in Gouverneur, New York. Boyle Dec., at ¶ 9, Ex. G, Deposition of Victor Loshek ("Loshek Dep."), at 13:14-19; Boyle Dec. at ¶ 9, Ex. H, Loshek Dep., Ex. 2, at BALSCH0000003. Mr. Loshek financed the vehicle through TDAF. Boyle Dec., ¶ 9, Ex. I,

---

burden, TDAF has refused to produce classwide evidence regarding purported consent. There is therefore a common and uniform *absence* of *any* classwide evidence regarding prior express consent to receive autodialed and prerecorded calls.

[2] TDAF has refused to produce a customer list or the telephone numbers customers placed on their initial credit applications until after class certification; Plaintiff's view is that TDAF must produce that information now. The parties are currently meeting-and-conferring about this issue.

Loshek Dep., Ex. 4, at TDAF000185-86. Mr. Loshek was the only signatory to the Retail Finance Contract. *Id.* at TDAF000192.

At the time Mr. Loshek took out the auto loan with TDAF, and to the present, Mr. Loshek lived with Plaintiff in the same household. Loshek Dep., at 13:23 − 14:1; Boyle Dec., at ¶ 10, Ex. J, Deposition of Amanda Balschmiter ("Balschmiter Dep."), at 13:6-11. Plaintiff was not a signatory to the Retail Finance Contract with TDAF, and was not even a user of the vehicle, as she does not drive. Balschmiter Dep., at 60:3-7. From time to time, Plaintiff would assist Mr. Loshek in handling his financial matters while he was at work. *Id.* at 67:12-24.

Beginning on or before December 11, 2012, Plaintiff received automated calls from TDAF on her cellular telephone [3]. Balschmiter Dep., at 51:1-20. Plaintiff would sometimes receive multiple calls in the same day. *Id.* at 52:2-3. The calls utilized an automated or prerecorded voice. *Id.* at 52:9 − 53:2. Plaintiff changed her cellular telephone number in an attempt to stop the automated calls, to no avail. *Id.* at 20:10-15. [4]

## IV. LEGAL STANDARD

Class certification is proper if Plaintiffs satisfy the requirements of Rule 23(a) and one of the prongs of Rule 23(b). The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there is none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010).

"Class certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A. & Assoc. Ltd.. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also Arnold Chapman and Paldo*

---

[3] Ms. Balschmiter used two different cell phone numbers during the class period.
[4] TDAF also made automated calls to Mr. Loshek's father on his cell phone. Balschmiter Dep., at 58:5-20.

*Sign & Display Co. v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at *15, fn. 11 (N.D. Ill. 2014) ("*Chapman I*"), *leave to appeal denied* 747 F.3d 489 (7th Cir. 2014) ("*Chapman II*") (Posner, J.) ("The defendants simply ignore the many cases decided during and since 2011 in which TCPA classes have been certified, as well as the Seventh Circuit's observation in *Turza* that class certification is the norm in TCPA cases."). These holdings are consistent with the Supreme Court's observation that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

In order to certify a class, Plaintiff must demonstrate that she meets the requirements of Rule 23. This requirement has three parts. First, as a threshold requirement, Plaintiff must demonstrate that: (1) the representative Plaintiff has standing; and (2) the proposed class is ascertainable. *See, e.g. Blihovde v. St. Croix County, Wis.,* 219 F.R.D. 607, 614 (W.D. Wis. 2003) (citing 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 1785.1, at 139 (2d ed.1986) (standing) and Manual for Complex Litigation ("Complex Litigation") § 21.222 (4th ed. 2004) (ascertainability)). Second, a proposed class must meet all of the requirements of Rule 23(a), which are "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc.,* 265 F.R.D. 405, 410 (E.D. Wis. 2010) (citing *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006)). Finally, the proposed class must qualify as one of the types described in Rule 23(b). *Id.* (citing *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977)). In this case, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating of the controversy," *Barden v. Hurd Millwork Co., Inc.,* 249 F.R.D. 316, 319-320 (E.D. Wis. 2008) (quoting the rule) (internal quotation marks omitted), and under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Alternatively, if the Court has any concern about Rule 23(b)(3) or Rule 23(b)(2) class certification at this time, Plaintiff seeks certification of an "issues" class under Rule 23(c)(4). "Rule 23(c)(4) provides that 'when appropriate, an action may be brought or maintained as a class action with respect to particular issues.'" *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith*, 672 F.3d 482, 491 (7th Cir. 2012) (quoting the rule). Because this case involves non-customers who could not have consented to receive automated calls from TDAF, this case is even more susceptible to class certification than a "normal" TCPA case. The proposed class meets all requirements for certification.

## V. ARGUMENT

### A. The Class Representative Has Standing

"Standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Andersen v. Harris & Harris, Ltd.,* No. 13-cv-867, 2014 WL 1600575, at *7 (E.D. Wis. Apr. 21, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).) "Its basic elements are: (1) that the plaintiff alleges an injury-in-fact; (2) the injury is fairly traceable to the defendant's unlawful conduct; and (3) the injury is likely to be redressed by the relief the plaintiff seeks." *Id.* (citations omitted). An allegation that the plaintiff is entitled to statutory damages, such as those provided for in the TCPA, is sufficient to

constitute injury-in-fact. *Id.* at *8 (citing, e.g., *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009)).

It is undisputed that Plaintiff received calls on her cellular telephone from TDAF. Plaintiff alleges that those calls were made in violation of the TCPA, which provides for statutory damages to the call recipient. As such, Plaintiff has properly alleged: (1) an injury-in-fact (the invasion of privacy caused by the unwanted calls); (2) stemming from TDAF's unlawful conduct (the automated calls in violation of the TCPA); and (3) that the injury may be redressed (via the statutory TCPA damages). Plaintiff has standing to represent the proposed class.

### B.     The Proposed Class is Ascertainable

"While Rule 23 does not explicitly require the 'ascertainability' of a class, the Seventh Circuit has determined that a plaintiff's proposed class definition must "indeed [be] identifiable as a class.'" *Herkert v. MRC Receivables Corp.,* 254 F.R.D. 344, 348 (N.D. Ill. 2008) (quoting *Oshana*, 472 F.3d at 513). "Although the identity of individual class members need not be *ascertained* before class certification, the membership of the class must be *ascertainable*." Complex Litigation, at § 21.222 (emphases added). "[A]scertainability entails two important elements. First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *N.B. v. Hamos*, ___ F. Supp. 2d ___, 2014 WL562637, at * 4 (N.D. Ill. Feb. 13, 2014) (quoting *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)) (internal quotation marks omitted). A defendant's argument that identifying class members "may be difficult" is not sufficient to preclude a finding that a TCPA autodialer class is ascertainable. *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (finding TCPA robocalling class ascertainable). "It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make

the class definition insufficient." *Herkert*, 254 F.R.D. at 348 (citations omitted). The merits of a

potential claim are irrelevant to the ascertainability inquiry. *Chapman I*, 2014 WL 540250,

("The class definition requires that class members be reasonably ascertainable, not that they

demonstrate a reasonable likelihood of success on the merits.") (citations omitted).

> Plaintiff's proposed class consists of:

> All persons within the United States who, on or after October 21, 2009, received a
> non-emergency telephone call from or on behalf of TDAF to a cellular telephone
> through the use of an automatic telephone dialing system or an artificial or
> prerecorded voice, who did not have a contractual relationship with TDAF.

Dkt. No. 28, Second Amended Complaint, at ¶ 30. In other words, the proposed class consists of

individuals who received calls from TDAF on their cell phones, but who were *not* customers of

TDAF. Those are entirely objective criteria.

> The process to determine who is in the class is likewise straightforward.

(1) Plaintiff has already obtained, from TDAF's records, a list of all telephone numbers

autodialed by TDAF during the class period ("the Dialer List").

(2) Plaintiff, in consultation with her expert, has run that list through available databases to

remove numbers associated with landline telephones from the Dialer List.

(3) TDAF must produce, either to Plaintiff or to a neutral party, a list of all of its current or

former customers, as well as the telephone numbers provided to it by its customers on

their initial applications for credit.

(4) Plaintiff's expert or the neutral party will compare the list of initial credit application

telephone numbers to the Dialer List and remove all matches from the Dialer List.

(5) Plaintiff's expert or the neutral party will use publicly available sources to do a "reverse

look-up" on the remaining numbers in the Dialer List. That list will be compared to the

list of customer names provided, and all current and former customers will be removed. The remaining list of names is the class list.

This proposed method for determining the class list meets the ascertainability requirement. The steps to ascertain the class are purely mechanical in nature: it is simply winnowing down the Dialer List by excluding calls to persons who are *not* members of the class. TDAF has already produced the Dialer List described in Step Number 1. Boyle Dec., ¶ 7, Ex. F. Plaintiff's expert, Jeffrey Hansen, has already conducted the analysis described in Step Number 2, which removes non-actionable calls to landline telephones. Expert Declaration of Jeffrey Hansen ("Hansen Dec."), at ¶¶ 9-13. The remaining steps have not yet been done, as TDAF has not produced the list of telephone numbers associated with its current and former customers nor the names of those customers. However, the parties are currently meeting-and-conferring regarding this dispute.

This method is reasonably reliable. TDAF has records of calls made using its automated dialer systems, which include the numbers dialed. McCullough Dep., at 43:13 – 45:6. Indeed, TDAF has already produced this data in the case. Similarly, TDAF maintains an electronic scan of the original credit application for every customer in that customer's file. Barnes Dep., at 119:4 – 121:12. These internal records are maintained by TDAF in the course of its business, and are used by TDAF personnel on a daily basis. Barnes Dep., at 121:3 – 122:9. Plaintiff has articulated an objective, reliable method for producing a list of members of the proposed class.

[5] Plaintiff's class is ascertainable.

---

[5] Indeed, courts in this Circuit have certified TCPA classes even where, unlike here, no call records remain *at all*. *See CE Design v. Beaty Constr., Inc.*, 2009 WL 192481, at *4 (N.D. Ill. Jan. 26, 2009) (certifying class and finding that ascertainability was satisfied where "potential plaintiffs that come forward will have to represent to the Court— via affidavit and under the penalty of perjury—that they received the fax on the dates in issue").

1185386.4

### C. The Requirements of Rule 23(a) Are Met

A proposed class must meet all of the requirements of Rule 23(a), which are "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Thompson,* 265 F.R.D. at 410. The proposed class meets all four of these requirements.

### D. The Proposed Class is Sufficiently Numerous

A class is numerous if it is large enough "that joinder of all parties is impractical." Fed.R.Civ.Pro. 23(a)(1). "The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." *Armes v. Sogro, Inc.,* No. 08-c-0244, 2011 WL 1197537, at *2 (E.D. Wis. March 29, 2011). It is not necessary to have a precise count of the number of proposed class members prior to certification. "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Chapman II,* 747 F.3d at 492. Courts regularly make "common sense" conclusions in certifying TCPA classes. *See, e.g.*, *Sadowski v. Med1 Online, LLC*, 2008 U.S. Dist. LEXIS 41766, at *7-9 (N.D. Ill. May 27, 2008).

Importantly, as the Seventh Circuit has recently held, numerosity is determined prior to any consideration of whether a particular class member has a valid claim. *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1084 (7th Cir. 2014). Thus, the question of whether TDAF may or may not be able to demonstrate that it had prior express consent to autodial non-customers is irrelevant to the determination of numerosity. "How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Id.* (emphasis in the original).

During the class period, TDAF autodialed 1,814,019 unique phone numbers. Boyle Dec., at ¶ 7, Ex. F. Plaintiff's expert, Jeffrey Hansen, has deduced that 752,371 of those unique numbers are cell phone numbers. Hansen Decl, ¶ 13. There is no doubt that the overwhelming majority of those 752,371 unique numbers belong to TDAF customers who are not part of the

class. Nevertheless, given TDAF's demonstrably poor compliance with regard to autodialing the cell phones of non-customers, there is also no doubt that a significant percentage of those calls to cell phones were indeed to non-customers. *See* Wade Dep., at 122:14 – 123:24 (confirming that Plaintiff's cell phone number was placed in the automated dialer field of the Loshek account); *see also* Wade Dep., at 55:24 – 56:12 (describing cell phone compliance rates of 41.38 percent over a six-month period). As discussed above, Plaintiff cannot yet determine precisely how many of the 752,371 unique numbers are non-customers' cell phones until TDAF provides its customers' names and telephone numbers from their initial credit applications. But even if only *one percent* of the cell phone numbers called by TDAF were non-customers—approximately 7,500—the class is sufficiently numerous for purposes of Rule 23(a)(1). [6] Given the potential size of the class, it is reasonable to believe that the proposed class is easily sufficiently numerous to be certified.

### E. The Proposed Class Contains Common Issues of Law and Fact

The commonality requirement, Rule 23(a)(2), requires the plaintiff to show "that there are questions of law and fact common to the class." *Thompson*, 265 F.R.D. at 410 (quoting the rule). "The commonality requirement is generally satisfied by a common nucleus of operative fact." *Id.* at 410-11 (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Given that automated calling programs are often done on a mass basis, as here, and given that the TCPA is a strict liability statute, a proposed TCPA class often contains common issues of law and fact. *See Hinman v. M & M Rental Center, Inc.,* 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) ("M and M's fax broadcasts were transmitted en masse based on the 'leads' list compiled several years earlier. Under the circumstances, the question of consent may rightly be understood

---

[6] The ratio of non-customers to customers may be much higher than one percent, in light of the fact that TDAF autodialed two non-customers—Plaintiff and Mr. Loshek's father—regarding the *single account* of Mr. Loshek, and in light of TDAF's own findings and admissions regarding its compliance with its own cell phone policies.

as a common question."); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (certifying a class with the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages.").

The fact that a defendant may assert that it has "prior express consent" under the TCPA is not an impediment to finding commonality for class certification purposes. *See Hinman,* 545 F. Supp. 2d at 807 ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.")

Indeed, the central common question in this action – whether TDAF uses an autodialer – *has already been answered in the affirmative* by TDAF. Plaintiff submits that class-wide adjudication of this action would implicate, at a minimum, the following additional common issues:

1.     Whether automated calls by TDAF to non-customers are in violation of the TCPA;

2.     Under what circumstances, if any, may a non-customer provide "prior express consent" to be called by TDAF via automated means;

3.     Whether those class members are entitled to statutory damages under the TCPA; and

4.      Whether TDAF's calling activities constitute "willful" or "knowing" violations of the TCPA, and thereby entitle Plaintiff and the class members to automatic treble damages under the TCPA.

Given these common issues, Plaintiff has articulated a "common nucleus of operative fact" that links the claims of all class members' claim together.  The proposed class satisfies the requirements of Rule 23(a)(2).

## F.      Plaintiff's Claims Are Typical of Those of the Class

"Typicality for Rule 23 purposes exists when 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Thompson,* 265 F.R.D. at 411 (quoting the rule).  "This occurs when a plaintiff's claim arises from the 'same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'"  *Id.* (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).  Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met."  *Hinman*, 545 F. Supp. 2d at 806-07 (citing, e.g., *Keele*, 149 F.3d at 594).

Here, the standardized course of conduct is TDAF's practice, contrary to its written policy, of using automated dialers to make telephone calls to non-customers that TDAF associated with the accounts of TDAF customers.  It is undisputed that Plaintiff, who is not and was never a customer of TDAF, received automated calls from TDAF to her cell phone.  Her claims thus flow from the same conduct that produced the calls to all the other members of the proposed class.  Her claims are therefore typical of those of the class.  Rule 23(a)(3) has been satisfied.

### G.     Plaintiff is an Adequate Representative of the Class

Finally, Rule 23(a)(4) "requires that the 'representative parties will fairly and adequately protect the interests of the class.'" *Thompson,* 265 F.R.D. at 411 (quoting the rule).  Analysis of adequacy consists of two parts.  First, the Court must be satisfied that "the plaintiff has [no] interests antagonistic to those of the class." *Id.* (citing *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977)).  Second, the Court must determine that "the plaintiff's attorney is qualified, experienced and generally able to conduct the proposed litigation." *Id.* (citing *Susman*, 561 F.2d at 90).   [7]

Plaintiff has no interests that are antagonistic to the class.  In her deposition, she stated clearly that her role as a class representative is "[t]o do whatever it takes to get the phone calls to stop for the class and myself."  Balschmiter Dep., at 5:15-16.  She has received no money or other compensation in return for serving as a class representative. *Id.* at 5:10-12.  Her interests are aligned precisely with those of the class.

### H.     The Rule 23(b)(3) Requirements are Satisfied

Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." *Barden,* 249 F.R.D. at 319-320 (quoting the rule) (internal quotation marks omitted).   Here, common questions predominate over individual issues and the class actions device is superior to other methods of adjudication.  Thus, the proposed class is properly certified under Rule 23(b)(3).

---

[7] Pursuant to the 2003 amendments to Rule 23, the qualifications of the Plaintiffs' counsel are assessed pursuant to subsection (g), and therefore are addressed below.

1185386.4

## I. Common Issues Predominate in Adjudicating the Claims of the Class

Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625. The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck and Co.,* 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S.Ct. 2768 (2013), *judgment reinstated* 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S.Ct. 1277 (2014). "[T]he requirement of predominance is not satisfied if 'individual questions ... overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1196 (2013)). However, "predominance is [not] determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Butler II*, *id*. "An issue 'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). Individualized calculations of damages for each class member do not defeat predominance. *Id.*

As the Supreme Court recently held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen*, 133 S. Ct. at 1191. "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.*

TCPA claims, by their nature, involve large numbers of plaintiffs who received identical calls, a single defendant (or small number of defendants), and a common course of conduct that affected each plaintiff in the same way. As discussed above in connection with the commonality requirement under Rule 23(a)(2), Plaintiff has identified at least four common issues that arise from TDAF's common course of conduct and are suitable for class adjudication: (1) whether

automated calls by TDAF to a non-customer violate the TCPA; (2) under what circumstances, if any, may a non-customer provide "prior express consent" to be called by TDAF via automated means; (3) whether those class members are entitled to statutory damages under the TCPA; and (4) whether TDAF's calling activities constitute "willful" or "knowing" violations of the TCPA and therefore entitle Plaintiff and the class members to treble damages.  In contrast, Plaintiff anticipates that the only potential individualized issue TDAF can raise is whether individual non-customers have provided their "prior express consent" to be called.  However, the presence of potential prior express consent arguments for individual class members does not defeat predominance, for three reasons.

First, TDAF likely will have no valid prior express consent defense as to *any* of members of the proposed class.  It is undisputed that the calls made by TDAF were made in connection with attempts by TDAF to collect the debts *of TDAF customers*, not the debts of class members. The FCC has made clear – in a declaratory ruling that is binding on this Court – that, in order for a company using an automated dialer to have valid "prior express consent" to make such calls, prior express consent can occur "only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."  2008 FCC Ruling, at ¶ 10.

The FCC has recently provided important additional guidance on the possibility for debt collectors to obtain prior express consent to robocall non-customers in its recent amicus filing with the Second Circuit in the *Nigro* case.  *See* FCC Brief, Boyle Dec. ¶ 2, Ex. A.  In that case, Plaintiff Albert Nigro reached out to a local power company to order service to be discontinued for his deceased mother-in-law.  FCC Brief at 6.  In the course of that transaction, Nigro provided his cell phone number to the power company.  *Id.*  A year-and-a-half later, Nigro began

receiving automated calls on his cell phone from a debt collector retained by the power company in an attempt to collect the remaining balance on the mother-in-law's account. *Id.* Nigro filed a TCPA action, but the district court granted summary judgment to the debt collector, holding that Nigro provided his consent to be autodialed when he provided his cell phone number to the power company during the initial call. *Id.* at 7. On appeal, the Second Circuit requested the FCC weigh on the meaning of "prior express consent" in the non-customer context. *Id.* at 1.

The FCC opined that Nigro not only did not provide, but *could not have provided*, his prior express consent to be autodialed under the facts of the case. *Id.* at 8. Relying on the 2008 FCC Order, the FCC stated:

> In this case, "the transaction that resulted in the debt owed," *Id.* at 564-65 (10), was [the mother-in-law's] purchase of electric service from National Grid. Nigro did not give National Grid his cellular telephone number in the transaction in which [the mother-in-law] made or arranged for that purchase. Instead, Nigro provided his telephone Number to National Grid after [the mother-in-law] had incurred that debt, and indeed after [the mother-in-law] had passed away. Moreover, the later transaction in which Nigro sought the discontinuance of [the mother-in-law's] electric service is not the transaction that "resulted in the debt owed"—Thomas's request for electric service. No debt was incurred by Nigro's request to have service discontinued at Thomas's residence.

FCC Brief at 8-9.

In other words, the relevant "transaction" for purposes of prior express consent under the TCPA is the origination of the loan or debt, and _only_ the origination of the debt. Some later encounter relating to the original transaction, even if it involved a caller providing a cell phone number, does not constitute prior express consent to autodial the number received at the later stage. In the context of a class consisting only of non-customers, such as this proposed class, the TCPA therefore requires, at a minimum, that for TDAF to have obtained valid prior express consent, it would have had to receive such prior express consent from each non-customer at the time it entered into the loan with the customer about whose debt TDAF called each non-

customer. [8]   There is no evidence that Plaintiff, or any other non-customer called by TDAF,

provided such prior express consent at the time of loan origination.  Indeed, the form loan

origination agreement signed by Mr. Loshek does not even contain a place to put down the

contact information of anyone other than the borrower or a co-borrower, *see* Boyle Dec., ¶ 9, Ex.

I, at TDAF000191-192, and there is no evidence that any TDAF customers included the cellular

telephone numbers of friends, family, or associates on their own accord.   [9]

The FCC's interpretation of its own Rules, such as that provided in the FCC Brief, is

entitled to *Chevron* deference.  *Indiana Bell Telephone Co., Inc.  v. McCarthy,* 362 F.3d 378,

386-87 (7th Cir. 2004) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837,

104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).  As such, the FCC's interpretation is binding so long as

it represents a "reasonable accommodation of conflicting policies that were committed to the

agency's care by the statute, [and] unless it appears from the statute or its legislative history that

the accommodation is not one that Congress would have sanctioned."  *Chevron*, 467 U.S. at

845.[10]   For purposes of a class certification predominance analysis, however, the important

point is that any challenge TDAF would make to the FCC's interpretation is a purely legal issue

of general application, and is thus suitable for classwide adjudication.  Moreover, it is a threshold

question that must be reached before the Court can determine whether individualized issues of

---

[8] Even if a customer had provided the cellular telephone number of a non-customer on the initial credit application (for some reason), the language of the 2008 FCC Rule suggests that this consent would be invalid, as prior express consent requires that "the wireless number was provided <u>by the consumer</u> to the creditor."  2008 FCC Ruling, at ¶ 10.  The FCC Brief does not reach this issue, FCC Brief at 9, fn. 3, but the plain language of the Ruling, as well as authority from the 7th Circuit considering the TCPA, suggests that a customer cannot consent on behalf of a non-customer to receive automated calls.  *See Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 641 (7th Cir. 2012) ("Consent to call a given [cellular telephone] number must come from its current subscriber.").  As in the FCC brief, however, the Court need not reach this issue.

[9] And even if they had, TDAF still would not have the prior express consent of those persons.  A person can only give his or her own prior express consent, not someone else's.  *Soppet*, 679 F. 3d at 641.

[10] There is nothing remotely unfair or unreasonable about the FCC's interpretation.  TDAF was certainly free to *manually dial* the cell phones of non-customers, which its own written policies required it to do and which it did on many occasions.  *See also Soppet,* 679 F.3d at 642 (discussing other options for bill collectors to contact customers while ensuring compliance with the TCPA).

prior express consent predominate over the other classwide issues in the case. In "one stroke,"
the Court can determine whether individualized consideration of each class member's consent is
necessary, and thus resolve "an issue central to the validity of each one of the claims." *Butler II,*
727 F.3d at 801 (internal quotation marks omitted). The ability of the Court to resolve this issue
on a common basis itself justifies certifying the class at this time.

Second, even if the Court were to find that prior express consent would have to be
determined on a class-member-by-class-member basis, that conclusion would *still* not defeat
predominance. A pure merits defense, such as prior express consent,[11] is a matter to be
determined *after* class certification, not before. "How many (if any) of the class members have a
valid claim is the issue to be determined after the class is certified." *Chapman II*, 747 F.3d at
492 (quoting *Parko*, 739 F.3d at 1085) (internal quotation marks omitted). Indeed, the *Chapman*
case specifically deals with predominance in light of potential defenses in the TCPA context, and
finds that such potential defenses do not defeat predominance. Such defenses would prevent a
particular class member from ultimately *recovering* as part of the class, but they do not defeat
class certification. *See id.* ("Recipients of faxes who don't have rights under the Telephone
Consumer Protection Act just wouldn't be entitled to share in the damages awarded to the class
by a judgment or settlement."); *see also Butler I*, 702 F.3d at 362 ("Sears argues that most
members of the plaintiff class did not experience a mold problem. But if so that is an argument
not for refusing to certify the class but for certifying it and then entering a judgment that will

---

[11] The burden is on the creditor to demonstrate that a customer has given consent. *See* 2008 FCC Ruling, at ¶ 10
("To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed
and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the
consumer provided prior express consent.")

largely exonerate Sears—a course it should welcome, as all class members who had not opted out of the class action would be bound by the judgment.").[1] [2]

Third, there is a complete lack of evidence that any class member provided prior express consent to receive autodialed or prerecorded calls. In the absence of evidence, neither Defendant's "speculation" that customers may have given their prior express consent to receive calls nor "a bare assertion of individualized issues of consent" are sufficient to defeat class certification. *Agne*, 286 F.R.D. at 567 (citing *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. C10-253, 2012 U.S. Dist. LEXIS 133567, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012)). The absence of evidence is common and uniform for the entire class. Given the complete lack of evidence, the Court may determine on a classwide basis that TDAF cannot meet its burden of establishing prior express consent to make autodialed or prerecorded calls to any absent class member.

Thus, in any case, the multitude of common issues presented by the proposed class predominates over TDAF's expected assertion of a prior express consent defense. The predominance portion of Rule 23(b)(3) is satisfied.

### J. The Proposed Class is a Superior Method of Adjudicating the Claims of the Class Members

The second prong of the analysis under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); Fed. R. Civ. P. 1 ("[Federal Rules] should be construed

---

[12] Plaintiff is aware of decisions in other Courts that have held that the presence of consent defenses in a TCPA context defeats predominance. *See, e.g., Jamison v. First Credit Services, Inc.,* No. 12-cv-4415, 2013 WL 3872171, at **6-7 (N.D. Ill. 2013). Respectfully, *Jamison* and its progeny are flawed in two different ways. First, they are inconsistent with the more recent guidance on predominance that the Seventh Circuit has provided in the *Butler* and *Chapman* cases. Second, *Jamison* requires that the <u>Plaintiff</u> articulate a uniform method by which it would adjudicate consent defenses. This is inconsistent with the FCC's guidance that the burden is on <u>defendant</u> to demonstrate consent under the TCPA. By improperly shifting the burden to the Plaintiff, *Jamison* distorts the predominance analysis in a fundamental way.

and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). "Rule 23(b) (3) was designed for situations [ ] in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Armes,* 2011 WL 1197537, at * 6. "Class certification is usually considered a superior method of adjudicating claims involving standardized conduct, even if there are individual issues that exist among class members (for example, on questions such as damages)...." *Id.* (quoting *Cicilline v. Jewel Food Stores, Inc.,* 542 F. Supp. 2d 831, 838 (N.D. Ill. 2008) (internal quotation marks omitted).

A TCPA class, such as the one proposed here, is a textbook example of a situation where the class action vehicle is superior. Automated call programs, such as TDAF's, are conducted on a mass basis, with calls being made to thousands of people. These individuals are often unaware that these calls are unlawful, and thus do not pursue their legal remedies. Even if they were aware of their rights under the TCPA, their individual recovery would often be modest, deterring an individual suit. And if the individuals were to pursue individual actions, the result would be thousands of actions, each involving the same or substantially similar legal and factual issues.

For these reasons, superiority is routinely found in the TCPA context. *See, e.g. Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,* 281 F.R.D. 327, 339 (E.D. Wis. 2012) ("Providing evidence of the defendant's alleged violation of the TCPA, as it relates to this specific class, would be duplicated in each individual lawsuit if the action were not allowed to proceed as a class. This runs counter to the objective of class actions to provide efficiency for the parties and the courts."); *Hinman,* 545 F. Supp. 2d at 807 ("It also appears that resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."); *Green v. Service Master On Location Services Corp.,* No.

07-cv-4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("Resolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources.") . While not insignificant, courts routinely find that even the statutory TCPA damages of "[f]ive hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Agne*, 286 F.R.D. at 571

Thus, the proposed class meets the superiority requirement of Rule 23(b)(3).

**K.      Certification is Appropriate Under Rule 23(b)(2).**

As an alternative to certification under Rule 23(b)(3), Plaintiff requests that the Court certify a hybrid class under Rule 23(b)(3) and Rule 23(b)(2), either:  (1) certifying the case under both subsections of Rule 23(b), or (2) certifying the equitable portion under of the case under Rule 23(b)(2) and the damages portion of the case under Rule 23(b)(3). As explained in more detail below, the Seventh Circuit approved this alternative approach in *Pella Corporation v. Saltzman*, 606 F.3d 391 (7th Cir. Ill. 2010) (Posner, J.).

Rule 23(b)(2) requires a plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Unlike Rule 23(b)(3), a plaintiff need not show predominance of common issues or superiority of class adjudication under this subsection, but only a showing of cohesiveness of the class claims.  *Id.*

Here, TDAF has acted or refused to act on grounds that apply generally to the proposed class by making autodialed and prerecorded calls to all class members.  And here, there is a single result expressly provided for by the TCPA that would provide relief to every member of the class – an injunction barring TDAF from making such calls.  *See* 105 Stat. 2394 (note

following TCPA, 47 U.S.C. § 227) (containing Congressional Findings that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."). Plaintiff seeks an injunction to protect non-customers from TDAF's automated calls prospectively.

The Seventh Circuit approved a similar approach in *Pella*. There, plaintiffs owned buildings containing allegedly defective casement windows manufactured by Pella that rotted at an accelerated rate, and sought certification of two nationwide classes: a damages class under Rule 23(b)(3) of purchasers who paid to replace their rotted windows, and an injunctive relief class under Rule 23(b)(2) of purchasers who had not replaced their windows, but might in the future have to do so because of the purported design flaw. *Pella Corp.*, 606 F.3d. 391. The court found that declaratory judgment sought by plaintiffs would entitle class members to have their windows replaced, and therefore the Rule 23(b)(2) class would benefit uniformly from such a declaration. *Id.* at 395. The same holds true here: because members of the class would benefit uniformly from injunctive relief, Rule 23(b)(2) certification is appropriate.

### L.     The Rule 23(c)(4) Requirements are Satisfied

In addition, the Court has ample discretion under Rule 23(c)(4) to certify particular issues in the case. Plaintiff believes that 23(b)(3) class certification of this case is appropriate now. However, if the Court believes that the prior express consent issue should be determined first, then as an alternative, Plaintiff seeks class certification under Rule 23(c)(4).

A class certified under Rule 23(c)(4) is commonly referred to as an "issues class." The text of the Rule simply states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." In a Rule 23(c)(4) class, a particular issue that

is common to all class members is isolated and resolved on a classwide basis. Once this is accomplished, the remaining issues that are adjudicated (if there are individual issues to specific members of the class, they are adjudicated on an individual basis; if there are remaining classwide issues, they are adjudicated on a classwide basis). *See McReynolds*, 672 F.3d at 484 (reversing a denial of certification for a Rule 23(c)(4) class that would adjudicate whether Merrill Lynch's policies had a disparate impact on African American employees, leaving questions of direct discrimination and damages for individual determination); *Jimenez v. GLK Foods, LLC*, No. 12-C-209, 2014 WL 2515398, at * 10 (E.D. Wis. June 4, 2014) (certifying a Rule 23(c)(4) class to consider the employer's responsibilities under federal migrant labor statutes, leaving damages determinations for individual determination).

A robust jurisprudence, particularly in the Seventh Circuit, has built up around Rule 23(c)(4) issue classes and the circumstances under which they are appropriate. "If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Mejdrech v. Met–Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003); *see also McReynolds*, 672 F.3d at 491 (quoting *Mejdrech*). Indeed, Rule 23(c)(4) classes are a favored method of adjudicating common issues in the Seventh Circuit. *See Butler II,* 727 F.3d at 800 ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); *Jimenez*, 2014 WL 2515398, at * 10 ("the certification of the liability-only classes pursuant to

Rules 23(b)(3) and (c)(4) as Plaintiffs propose is consistent with the recommendation of the Seventh Circuit."). Rule 23(c)(4) classes can be used in situations where a proposed class does not meet the Rule 23(b)(3) requirements, or would otherwise prove "unmanageable" as a standard class action. Complex Litigation, at § 21.24.

As discussed above, common issues predominate over the single potentially individual issue—prior express consent. If the Court concludes otherwise, however, the best alternative is for the Court to certify a Rule 23(c)(4) class to address the circumstances, if any, under which a non-customer may give prior express consent under the TCPA. As discussed above, before the Court could consider whether a particular non-customer class member provided prior express consent to be called by TDAF, it must first determine under what circumstances a non-customer provides valid prior express consent. This is purely a legal question, and it is common to all members of the proposed class. If the Court were to certify an issue class here, it could adjudicate on a class-wide basis this common question.

If the Court rules that a non-customer *may* give prior express consent to be called under certain circumstances, determining whether an individual class member provided such consent would be streamlined. All prior express consent questions could be measured against a single, clearly articulated standard. Depending on the nature of the Court's ruling on prior express consent, such a determination may be a purely mechanical process that would not require significant intervention from the Court at all. In any case, the Court would realize the efficiency gains contemplated by the Seventh Circuit when it promotes the Rule 23(c)(4) device.

On the other hand, if the Court rules, as Plaintiff argues, that TDAF can *never* have prior express consent to call non-customers, the proceedings would be clarified and streamlined. At that point, there would be *no* remaining individual issues in the case. The Court would be free to

certify the class under Rule 23(b)(3) and resolve all remaining issues on a class-wide basis. This is the "two stage" certification process that is contemplated by the rules and endorsed by the Seventh Circuit. *See* Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *McReynolds*, 672 F.3d at 483 (suggesting that the court could consider Rule 23(b)(3) certification after resolving common issues in a (c)(4) class).

Either way, it would be far more efficient to resolve whether a prior express consent defense for non-customers can apply at all *before* considering whether any particular individual non-customer provided his or her prior express consent. This is preferable to the alternative, which would be to attempt to adjudicate a common issue in a series of individual actions. *See McReynolds*, 672 F.3d at 492 ("[T]he lawsuits will be more complex if, until issue or claim preclusion sets in, the question whether Merrill Lynch has violated the antidiscrimination statutes must be determined anew in each case.") A Rule 23(c)(4) class, is, as the Seventh Circuit has suggested, a "sensible way to proceed" if the Court declines to certify a 23(b)(3) class now. *Butler II,* 727 F.3d at 800. Therefore, in the alternative to certifying a Rule 23(b)(3) or Rule 23(b)(2) class, the Court should certify the proposed class under Rule 23(c)(4).

## VI.  APPOINTMENT OF CLASS COUNSEL

Lastly, Plaintiff requests that her counsel be appointed as Co-Lead Class Counsel for this action. Fed. R. Civ. P. 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and instructs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."

The attorneys for the Plaintiff are "qualified, experienced, and generally able to conduct the proposed litigation." The attorneys for the class are experienced class action practitioners.

Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"), and Meyer Wilson Co., LPA have worked together on a series of TCPA class actions that are in various stages of litigation. Counsel from these firms are fully versed with the intricacies of class actions in general and TCPA class actions in particular. A number of these cases have already been resolved, achieving excellent results for class members. These include what are believed to be each of the four largest cash settlements to date in the 23-year history of the TCPA.[1] [3] In addition, Cullen Weston Pines & Bach LLP is an experienced Wisconsin firm that handles a broad range of claims on behalf of employees, consumers and other plaintiffs, including in class actions and other complex litigation. Together, Plaintiff's attorneys have deep experience prosecuting similarly complex consumer class actions, have committed and will continue to commit more than sufficient resources to prosecuting this case, and are well qualified to handle this matter on behalf of the class. *See* Boyle Dec. ¶¶ 11-13, Exs. K, L and M (firm resumes of each firm).

**VII.    CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed class.

---

[13] *See In re Capital One Tel. Consumer Prot. Act Litig.,* No. 12-cv-10064, MDL No., 2416 (N.D. Ill.) (preliminary approval pending on a more than $75 million class settlement [Lieff Cabraser Court-appointed co-lead class counsel; Meyer Wilson additional class counsel]); *Wilkins v. HSBC Bank Nev., N.A.,* Case No. 14-cv-190 (N.D. Ill.) ($39,975,000 class settlement pending preliminary approval); *Rose v. Bank of America Corp.,* No. 5:11-cv-02390 (N.D. Cal.) (final approval pending on a more than $32 million settlement) ; *Arthur v. Sallie Mae, Inc.,* No. 10-cv-00198, 2012 WL 4075238 (W.D.Wash. Sept. 17, 2012) (approving a settlement worth $24.15 million); *see also Steinfeld v. Discover Financial Services,* No. C 12-01118, 2014 WL 1309352 (N.D.Cal. Mar. 31, 2014) (approving a settlement worth $8.7 million).

1185386.4

Dated: July 18, 2014

Respectfully submitted,

By: */s/ Tamara B. Packard*
    Tamara B. Packard

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
Nicole D. Reynolds
Email:  nreynolds@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email:   jselbin@lchb.com
Doug Cuthbertson
Email:  dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

MEYER WILSON CO., LPA
Matthew R. Wilson
Email:   mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

CULLEN WESTON PINES & BACH LLP
Lester A. Pines, SBN 1016543
Email: pines@cwpb.com
Tamara B. Packard, SBN 1023111
Email: packard@cwpb.com
122 West Washington Avenue, Suite 900
Madison, WI 53703
Telephone: (866) 443-8661
Facsimile: (608) 251-2883

1185386.4

*Attorneys for Plaintiff Amanda Balschmiter and the Proposed Class*

1185386.4