UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AMANDA BALSCHMITER, <br><br>  Plaintiff, <br><br> v. <br><br> TD AUTO FINANCE LLC. <br><br>  Defendant. | Case No. 13-CV-1186-JPS <br><br><br> ORDER |

1. BACKGROUND

The plaintiff, Amanda Balschmiter, filed a putative class action complaint against the defendant, TD Auto Finance LLC ("TDAF"), alleging that, as a non-customer of TDAF, the auto-dialed debt-collection calls TDAF placed to her cell phone—and, presumably, to the cell phones of other non-customers—violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. (Docket #1).

On November 20, 2014, the Court denied the plaintiff's motion for class certification. *See Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 530 (E.D. Wis. 2014). Thereafter, the plaintiff filed a petition for permission to appeal the Court's denial of class certification, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. (*See* Docket #78). On March 19, 2015, the Seventh Circuit denied the plaintiff's petition. *In re Amanda Balschmiter*, Case No. 14-8031 (7th Cir. Mar. 19, 2015) (order denying petition for permission to appeal). On March 20, 2015, the Court scheduled this case for trial on June 1, 2015 (Docket #80); that trial scheduling order was amended on April 30, 2015, setting a new trial date of June 4, 2015. (Docket #89).[1]

---

[1] An additional amended trial scheduling order issued on May 5, 2015, which corrected the time of the final pretrial conference to 2:30 p.m. (from 8:30 a.m.) on May 29, 2015. (Docket #94 at 1).

Before the Court are three pretrial motions: (1) the plaintiff's motion in limine to exclude certain evidence and arguments related to willfulness under the TCPA (Docket #70); (2) the defendant's motion to enforce the protective order (Docket #83); and, (3) the plaintiff's motion to compel production of documents from the defendant (Docket #82). As will be discussed more fully below, the Court will deny the plaintiff's motion in limine, grant the defendant's motion to enforce the protective order, and deny the plaintiff's motion to compel production.

2. THE PLAINTIFF'S MOTION IN LIMINE

The plaintiff's motion in limine requests that the Court "adopt[] the majority definition of willful or voluntary [conduct] under the TCPA," and "preclude[] [the defendant] from offering any evidence or argument at trial that its conduct was not willful or knowing because it was unaware of the requirements of the TCPA, or because it believed that it had put procedures in place to avoid violating the TCPA." (Docket #70 at 4). The plaintiff argues that any such arguments and evidence—if the Court "adopt[s] the majority view"—should be barred by Federal Rules of Evidence ("FRE") 401 and 402, and would also "run[] the risk of confusing the trier of fact," and thus should also be barred under FRE 403. *Id.*

The defendant offers various arguments in opposition to the plaintiff's motion in limine; those arguments can be summed up as follows: the plaintiff's "proposed definition [of willfully or knowingly] finds no support in the statute and has no basis in reality." (Docket #81 at 1).

Regardless of the parties' arguments, the Court will deny the plaintiff's motion in limine for one simple reason: the parties have stipulated to a bench trial in this matter. (*See* Docket #88). And, that stipulation was filed after the plaintiff's motion in limine was fully briefed. Whether the parties intended that stipulation to effectively moot the plaintiff's motion is unclear;

indeed, it would have been helpful for the parties to address whether their arguments regarding wilful or knowing conduct remained before the Court.

Regardless of the parties' intent, however, this matter will now be tried before the Court, sitting without a jury, making a pretrial ruling on the plaintiff's motion in limine unnecessary. *See Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001) (stating when a bench trial will occur, motions in limine are nonsensical); *see also Singh v. Caribbean Airlines Ltd.*, No. 13-CV-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("The rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence.…In fact, courts are advised to deny motions in limine in non-jury cases.") (citing 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2411 (3d ed. 2008)). This view is consistent with Seventh Circuit precedent. *See Ashford v. Gilmore*, 167 F.3d 1130, 1136 (7th Cir. 1999) ("…[T]he law presumes that judges are not influenced by improper evidence brought before them.") (citing, *inter alia*, *United States ex rel. Placek v. Illinois*, 546 F.2d 1298, 1305 (7th Cir. 1976)); *City of Joliet v. Mid-City Nat. Bank of Chicago*, No. 05-CV-6746, 2012 WL 5463792, at *11 (N.D. Ill. Nov. 5, 2012).

Thus, for the reasons stated above, the Court will deny the plaintiff's motion in limine (Docket #70). That said, the parties are free to—indeed are required to—argue the proper definition of wilful or knowing conduct in their respective trial briefs.

3.  NOTICE TO PUTATIVE CLASS MEMBERS

   3.1 Contacting Putative Class Members Using Materials Obtained in Discovery is Precluded By the Protective Order

The defendant's motion to enforce the protective order seeks an order from the Court that would "preclude Plaintiff or her attorneys from using data produced pursuant to the Protective Order to identify or contact third parties"; and, by third parties, the defendant means putative class members. (Docket #83 at 1). The genesis of the defendant's motion was a letter from the plaintiff stating that, despite the Court's denial of class certification, Plaintiff's Counsel—as "class counsel"—"have an obligation to inform proposed class members of the current posture of this matter and, for any of these non-customers of [TDAF] who received automated calls on their cellular telephones who wish to do so, to pursue available avenues to vindicate their rights." (Docket #85-7 at 1). This obligation, according to the plaintiff, is particularly acute given that the statute of limitations is now running on the putative class members' claims. *Id.*

To inform the putative class members, the plaintiff has taken a list of cellular telephone numbers provided by TDAF and used reverse look-up methods to ascertain the identifying information—including names and addresses—of those individuals; the plaintiff intends to send a letter to these individuals to inform them of their "potential claims." (Docket #90 at 4-5). The plaintiff's reverse look-up process, from TDAF's original list of telephone numbers, "produced a list of approximately 193,000 names and addresses of individuals." *Id.* at 5. TDAF consented to this reverse look-up process, as it expressly concedes, but argues that it did so "to assist the Court in its analysis of whether a class could be ascertained for purposes of certification." (Docket #95 at 5). The plaintiff argues, conversely, that TDAF's consent to

this reverse look-up process implicitly waived TDAF's right to enforce the protective order; in addition, the plaintiff argues that because TDAF expressly permitted this process, the data the plaintiff generated with TDAF's consent falls outside the scope of the protective order. (Docket #90 at 8).

The defendant's main argument is that the stipulated Protective Order entered by the Court on February 11, 2014 (*see* Docket #22, #23), explicitly precludes the plaintiff from using telephone numbers produced by TDAF during discovery to ascertain and contact putative class members. (*See* Docket #84 at 11) ("…Section 7.4(d) expressly contemplates Plaintiff's present demand—to use the phone numbers to contact third parties to this lawsuit—and prohibits such a use."). The portion of the protective order that governs the instant dispute states as follows:

> 7.4 Disclosure of Certain Telephone Numbers
>
> In the course of this litigation, …Defendant TDAF may produce data that includes telephone numbers of Customers ("Customer Outbound Dial Data") to Plaintiff. Such telephone numbers provided with Customer Outbound Dial Data are uniquely identifiable private financial information of TDAF's customers, and accordingly, require heightened protection from disclosure. The Parties hereto agree that such Customer Outbound Dial Data is designated as "HIGHLY CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to Section 2.4 of the Protective Order. For purposes of the Customer Outbound Dial Data only, the following provisions supersede the use, disclosure and handling of [such data]…
>
> . . .
>
> (d) The Receiving Party, their Outside Counsel and their Expert may not contact any telephone numbers listed in the Customer Outbound Dial Data for any purpose and may not attempt to ascertain the name, address, any other telephone number or contact information or any

>other information associated with the telephone numbers or the subscribers of the telephone numbers provided in the Customer Outbound Dial Data, through reverse skip tracing or otherwise, for any purpose.

(Docket #22 at 10-11).

The plaintiff concedes that the list of telephone numbers provided by TDAF during discovery is covered under the protective order. (*See* Docket #90 at 7) (noting that "there is no question that the list of telephone numbers provided by TDAF *is* covered under the Protective Order"). And, the plaintiff also notes that if she "proposed to call those numbers, *that* would violate the Protective Order." *Id.* Nevertheless, the plaintiff argues she is entitled to do so because her plan to notify the putative class members "proposes to send letters using the list of *names and addresses* which Plaintiff *derived* from those telephone numbers," and the protective order "does not make confidential the list of names and addresses, or anything else, *derived* from the telephone numbers produced by TDAF, but only the telephone numbers themselves." *Id.* (noting, also, that "[t]here is nothing in the language of the Protective Order that governs material *derived* from disclosures or responses to discovery; the Protective Order governs only the disclosures or discovery responses *themselves*").

The parties make additional arguments that all tangentially flow from those above—namely, whether the plaintiff's list was generated during settlement discussions and, even if it was, whether settlement privilege prevents the plaintiff from implementing her plan. The Court will not delve further into this wicky thicket because it is clear that the data the plaintiff seeks to use is covered by the protective order. And, because the use of that data to contact potential class members would violate the protective order, the Court will enjoin the plaintiff from doing so.

To begin, district courts have discretion to enter protective orders "to control the course of class action litigation," which has been "vested with trial courts because it is well-recognized that class actions present 'opportunities for abuse as well as problems for courts and counsel in the management of cases.'" *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)); *see also Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1013 (7th Cir. 1999) ("The class action is a valuable economizing device, especially where there is a multiplicity of small claims, but it is also pregnant with well-documented possibilities for abuse."). Because "plaintiffs have a right to contact members of the putative class," the propriety of a protective order—or enforcing an already entered protective order—"must involve a careful balancing of the potential for abuse created by the class action and the right of the plaintiffs to contact potential class members." *Williams*, 204 F.3d at 759.

There is a difference in kind, however, between the right to contact putative class members, which any court should be reticent to curtail, *see id.*, and the ability of a plaintiff to *use confidential discovery obtained during the litigation process* to facilitate those contacts. The Tenth Circuit has explained this notion in crystalline fashion:

> In this case, we are not concerned with the absolute prohibition of communication with potential class members, class representatives, or clients. Rather, the protective order Silvern violated merely defined the scope of Silvern's permitted use of AFIC's confidential files during the discovery process. The court never suggested that Silvern could not, on its own initiative and as a result of its own investigation, locate, interview, and encourage others to join the suit. It did, however, prohibit Silvern from employing the court's discovery authority to gain access to its adversary's

>     confidential files and then using those files for its own pecuniary gain.

*Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1094 (10th Cir. 2010).

Here, the same is true. Namely, the plaintiff is free to contact putative class members, using her own investigative techniques and information. She is not free, however, to do so using materials obtained through discovery that fall explicitly within the language of the protective order. And, the list of names and addresses the plaintiff generated most surely does fall within the scope of the protective order.

It is plainly disingenuous to argue that information *derived* from materials disclosed during discovery somehow escapes the grasp of the protective order. To wit, the plaintiff admits that she cannot call these telephone numbers; she does not explain, nor could she, how sending a letter from information *derived* from these numbers represents a protective-order-escaping sea change. In the Court's view, the plaintiff's tortured parsing of the protective order to assert such a position merely results in an argument that propounds a distinction without a difference.

If it were otherwise, and *derivative* materials were fair game, then parties would be free to compel confidential materials under the guise of furthering litigation, while actually doing nothing more than dredging up potential clients. Potential clients, when aggregated in the class action context, that the plaintiff could use to pressure the defendant into settlement or otherwise detriment their business. *See Williams*, 204 F.3d at 759 (noting that "the district court was clearly concerned about the potential for abuse if the plaintiffs were allowed to contact [the defendant's] customers, and expressed concern over the effect of such contacts on Chartwell's business. This is a legitimate concern and certainly presents a potential justification for

the district court's limitation on discovery"); *Cf. Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915-19 (7th Cir. 2011). This is not permissible under the protective order here, nor is it a tactic likely to gain much traction as a general matter, not to mention the privacy concerns attendant to such conduct.

The Court finds, because the information the plaintiff wishes to use is subject to the constraints of the protective order, the plaintiff may not use the list of telephone numbers provided by TDAF, or information derived from that list, to contact putative class members. The fact that TDAF consented to ascertainment of class members as part of the process leading up to the Court's decision on class certification does not alter the Court's conclusion. The protective order states that the plaintiff may not use the telephone numbers at issue—or information *derived* from it, as the Court has found—"*for any purpose,*" and that broad language is sufficient to cover any ambiguity the plaintiff attempts to latch on to in support of its position. *See Kaufman*, 601 F.3d at 1093 (noting that a "district court is in the best position to define the scope of the discovery orders and attendant protective orders it issues," and should not read those orders in a vacuum, or require that those orders "expressly…enumerate each and every act prohibited…even when such prohibited acts are obvious from the context of the litigation and the context in which the orders were issued").

### 3.2 The Court Is Neither Required Nor Compelled to Order Notice to Putative Class Members

The plaintiff requests, in the alternative, that notice to class members should be permitted because "it would be just," notwithstanding the plaintiff's concession that "notice or other forms of contact with non-customers who have been autodialed by TDAF is [not] *required,* [nor is]

Plaintiff's counsel currently represent[ing] those [putative class members]." (Docket #90 at 12); (*see also id.* at 16) ("Notice to non-customers who have been autodialed by TDAF is not required under Federal Rule of Civil Procedure 23(c)(2). Beyond such mandatory notice, however, the Court *may* issue notice as justice requires under Rule 23(d)(1)(B)."). The plaintiff proposes either notice by Plaintiff's counsel or a "neutral notice" by the Court.

The plaintiff's request to contact these individuals is rooted in her quest to "vindicate one of her goals in bringing a class action in the first place—to give non-customers the ability to assert their right to statutory damages for the invasion of privacy the calls from TDAF occasioned." (Docket #90 at 12). And she fears that the statute of limitations will prevent many of these individuals from asserting these rights they are unaware of. *Id.* ("There can be no doubt that some significant group of the non-customers robocalled by TDAF are unaware they may have viable claims against TDAF," and "[t]he statutes of limitations of non-customers…continue to run every day.").

In support of her position that notice is permissible in these circumstances, the plaintiff cites *Puffer v. Allstate Ins. Co.*, 614 F. Supp. 2d 905, 909 (N.D. Ill. 2009), where Magistrate Judge Sidney I. Schenkier found it appropriate to exercise the court's discretion and order notice to putative class members of the court's denial of class certification. The court in *Puffer* relied, in substantial part, on *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002), where Judge Posner stated in dicta, that denial of certification may require notice under former Rule 23(e). *See id* at 914-15. The court in *Puffer* acknowledged that Rule 23(e) was amended after *Culver* and thus Rule 23(e) notice no longer applies to putative class members (if it ever did), *see Puffer*,

614 F. Supp. 2d at 909, but nonetheless found that discretionary notice was permissible under Rule 23(d)(1)(B)(i)[2] to prevent putative class who were aware of the class suit—"awareness [that] gives rise to the risk" of prejudice—from "los[ing] any right to pursue individual claims without knowing it by expiration of the statute of limitations." *Id.* at 912.

The defendant raises a litany of reasons—aside from those involving the protective order discussed above—why notice to the putative class members would be improper, whether it be by Plaintiff's counsel or "neutral notice" ordered by the Court. Those reasons are: (1) Plaintiff's counsel is not "class counsel" because no class exists and thus there is no "authorization for the indiscriminate contacts counsel proposes," (Docket #84 at 13); (2) the plaintiff's proposal violates the privacy rights of the individuals on the plaintiff's list, *id.* at 14-15; (3) the plaintiff's request to send notice is an "effort to solicit prospective clients...[and] dredge up new claims" against TDAF, which is not a "legitimate purpose of this litigation," *id.* at 17; and (4) the cases the plaintiff cites in support are inapposite and there is abundant case law supporting the defendant's position that notice is neither required nor permissible in this context, *id.* at 18.

The Court will not expend its resources, limited as they are, elaborating on the defendant's reasons why notice would be improper, because, at bottom, the notice the plaintiff proposes is neither required (as she admits), nor even remotely permissible in these circumstances. As the Court will explain, the justifications for the Court's conclusion are legion.

---

[2]Rule 23(d)(1) provides that "the court may issue orders" that "(B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action." Fed. R. Civ. P. 23(d)(1).

First, the Court is not convinced that the plaintiff's request to send notice is a function of the plaintiff's altruism—or that of Plaintiff's counsel[3]—and not a ruse to either: (1) identify new clients and thereby recoup money Plaintiff's counsel has expended in attempt to certify the class;[4] or, (2) use the notice as leverage to force the defendant to settle, *see Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (noting that "danger of abuse that always attends class communications [prior to certification, including] the possibility that plaintiffs might use widespread publication of their claims, disguised as class communication, to coerce defendants into settlement . . .").[5] *Cf. Maddox & Starbuck, Ltd. v. British Airways*, 97 F.R.D. 395, 397 (S.D.N.Y 1983) (noting that "[i]n determining whether notice should be given to putative class members when class certification has been denied, the Court will take care to avoid giving rise to barratry," and requiring notice "without an adequate showing of reliance,

---

[3]Judge Posner's words in *Culver* ring true here; namely, all of the plaintiff's "moves in this suit were almost certainly the lawyer's," and "'[e]xperience teaches that it is counsel for the class representative and not the named parties, who directs and manages these actions. Every experienced federal judge knows that any statements to the contrary is [sic] sheer sophistry.'" *Culver*, 277 F.3d at 913 (quoting *Greenfield v. Villager Indus., Inc.*, 483 F.3d 824, 832 n.9 (3d Cir. 1973)); *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014).

[4](*See* Docket #90 at 15) ("Plaintiff['s] counsel does indeed intend to use Plaintiff's List to send letters informing persons on the list that they may have a valuable TCPA claim…"); *id.* at 2 ("If the claims of at least some of those non-customers are similar to Plaintiff's own claim, many of those persons' claims have significant value."); *id.* at 6 ("Many of these claims are likely to be quite valuable…").

[5]*See Marian Bank v. Elec. Payment Servs., Inc.*, No. 95-CV-614, 1999 WL 151872, at *2 (D. Del. Mar. 12, 1999) ("Courts have also rejected purportedly altruistic justifications for court-ordered notification of putative class plaintiffs.") (citing *Weisman v. Darneille*, 78 F.R.D. 671, 674 (S.D.N.Y. 1978)).

not only would be sanctioning barratry, but it would be actively promoting it").

Even were the Court to accept the plaintiff's assertion that she wants to vindicate the rights of others, that burden and duty has been lifted from her by the Court's denial of class certification. *See Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1381 (11th Cir. 1998) ("When the district court denies class certification, the named plaintiffs no longer have a duty to advance the interests of the putative class members."). Indeed, there is no class, and those putative members are not parties to—nor bound by—the instant litigation. *See Daniels v. Bursey*, 430 F.3d 424, 428 (7th Cir. 2005) ("Since a class was never certified, appellants were not members of a class, and therefore could not be bound."); *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (noting that "[n]ot even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*") (Scalia, J. dissenting).

Second, Rule 23 provides no imperative to order class notice here. *See* Fed. R. Civ. P. 23(e) (requiring notice of "a proposed settlement, voluntary dismissal, or compromise" to members of a "*certified class*") (emphasis added); *Fuller v. Instinet, Inc.*, 120 Fed. Appx. 845, 846-47 (2d Cir. 2004) (holding that even the pre-2003 version of Rule 23(e) "does not require notice to potential class members on a denial of class certification"); *In re Katrina Canal Breaches Litig.*, 401 Fed. Appx. 884, 887 (5th Cir. 2010) ("Even assuming that the district court had the power to issue such an order, which we do not decide, there is nothing that requires the court to order notice of the denial of class certification . . ."); *Rineheart v. Ciba-Geigy Corp.*, 190 F.R.D. 197, 202 (M.D. La. 1999) ("Neither the clear language set forth in subsection (e) of Rule

23 . . . nor the jurisprudence of the Fifth Circuit or elsewhere grants the Court the authority to mandate public notice of the denial of class certification.").

And, while Rule 23(d) may provide an avenue to order (or permit) discretionary notice to putative class members in certain scenarios,[6] *compare Puffer*, 614 F. Supp. 2d at 909-15 (finding discretionary authority to order notice of the denial of class certification in Rule 23(d)) *with Marian Bank*, 1999 WL 151872, at *2 (holding that Rule 23(d) does not apply when a class has not been certified),[7] the limited circumstances where notice under Rule 23(d)(1)(B)(ii) might be occasioned, are not present here. Namely, the plaintiff has not offered a scintilla of evidence that the putative class members were aware of or relied on the instant matter to protect their rights, or would otherwise be prejudiced.[8] *See Puffer*, 614 F. Supp. 2d at 912 (finding that

---

[6]Although the Court questions whether even this is true, given that Rule 23(d) presumes that the Court is "conducting an action" under Rule 23—*i.e.* the matter is properly a class action—and thus there are "class members" that require protection. *See* Fed. R. Civ. P. 23(d). Where class certification has been denied, as here, only the named plaintiff's claims remain; thus, there is no class, no action under Rule 23, and thus Rule 23(d) would have no application.

[7]*See also Farmers Coop. Co. v. United States*, 90 Fed. Cl. 72, 73 (Fed. Cl. 2009) (observing that notification under Rule 23(d) of the Rules of the United States Court of Federal Claims, which is identical to Fed. R. Civ. P. 23(d) "always follows class certification and thus, is premised upon the existence of class members to protect").

[8]On the contrary, the plaintiff *concedes* that "[t]here can be no doubt that *some significant group* of the non-customers robocalled by TDAF are unaware that they may have viable claims against TDAF." (Docket #90 at 12) (emphasis added); *see id.* at 14 (arguing that "there are no due process concerns here, because anyone who might receive a letter from Plaintiff *would be in the same position he or she is in currently*, unless and until he or she brings an individual action against TDAF") (emphasis added); *id.* ("While TDAF's desire to avoid having to defend itself in individual TCPA actions is perhaps understandable from the perspective of TDAF's self-interest, that is not a legally cognizable reason that should prevent non-customers from being informed of their rights and potential claims.").

"there [was] ample evidence that many putative class members were made aware of [the] lawsuit prior to [the court's] decision to deny class certification," and thus failure to notify those individuals would risk prejudice to them); *Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475, 485-86 (D. Md. 2008) (collecting cases and holding that even notice of decertification is not warranted if absent class members did not receive notice of the earlier certification (and thus relied on the suit to protect their rights)); *Griffith v. Javitch, Block & Rathbone, LLP*, 241 F.R.D. 600, 601-03 (S.D. Ohio 2007) (finding notice unwarranted where there was no objective evidence of reliance by putative class members or publicity of the case).

Third, the irony of sending nearly two hundred thousand notices to individuals whose information was obtained through reverse look-ups—a method the Court (and both parties' experts) expressed serious reservations about, *see Balschmiter*, 303 F.R.D. at 524-525—is not lost on the Court. It would seem odd, indeed, to permit notice to the absent class members using a method the Court found inaccurate enough to preclude class certification. Not only is there a risk of barratry here, *see Maddox & Starbuck*, 97 F.R.D. at 397, there is also a risk of Court-sanctioned junk mail.

The Court finds no reason to order or permit notice to the putative class members, given there is simply no evidence that the putative class members have relied on the instant matter to protect their rights, or would otherwise be prejudiced by the Court's decision not to order or permit notice. At bottom, permitting or ordering notice is discretionary, *see In re Katrina*, 401 Fed. Appx. at 887, and the Court finds no reason to exercise its discretion in any other fashion except to enforce the explicit language of the protective order.

Finally, to the extent that putative class members may lose their claims due to the statute of limitations, this places no obligation on the Court "to awaken potential litigants from their lethargy," *Marian Bank*, 1999 WL 151872, at *3, nor does it permit the Court to torch the protective order and ignore the unreliability of reverse look-ups of historical cell phone numbers, in order to, "in a sense[,] merely solicit[] client[s] for plaintiff's counsel under the aegis of the court." *Elias v. Nat. Car Rental Sys., Inc.*, 59 F.R.D. 276, 277 (D. Minn. 1973).

4. THE PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CALL LOG DATA

The plaintiff's motion to compel "seeks production from TDAF of a list consisting of all calls made by TDAF to the cellular telephone numbers associated with Plaintiff, including the dates and times of each call…, and related documentation," and is made pursuant to Fed. R. Civ. P. 37(a)(1). (Docket #82 at 1). The plaintiff makes two arguments in support of her motion: (1) that discovery closes thirty (30) days before the trial date, *see* Civil L.R. 26(c), and because the instant motion was filed on April 21, 2015, and trial is June 4, 2015, the motion is timely; and, (2) even if discovery has closed—*i.e.* if discovery closed on October 31, 2014, thirty (30) days before the *original trial date*—"good cause would exist to reopen discovery." *Id.* at 1-2. The Court finds the plaintiff's first argument nonsensical and the second unconvincing.

The plaintiff's argument that discovery was reopened when the Court rescheduled trial after the plaintiff's Rule 23(f) interlocutory appeal finds no support in the record, nor has the plaintiff cited any authority for this proposition. This case progressed all the way up to trial and, had the plaintiff

Page 16 of 20

Case 2:13-cv-01186-JPS   Filed 05/21/15   Page 16 of 20   Document 100

decided not to appeal the Court's denial of class certification, an individual trial would have commenced on the scheduled date.

In addition, nothing in the Court's order staying this matter pending resolution of the plaintiff's Rule 23(f) petition indicated the Court's intention to reopen discovery after the Seventh Circuit resolved the petition. (*See* Docket #76). On the contrary, the Court's order was clear that trial was imminent on the plaintiff's *individual claim* and quoted *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 835 (7th Cir. 1999) for the proposition that "interlocutory appeals under Rule 23(f) should not unduly retard the pace of litigation." (Docket #76 at 3). Reopening discovery after a Rule 23(f) petition would unequivocally do so.

In the end, the Court was obligated to enter a trial scheduling order after the Seventh Circuit ruled on the plaintiff's petition, given that no trial date was calendered at that time. But the Court's order, and those subsequent to it, altered nothing other than the trial date and those dates that flow necessarily from the trial date (the final pretrial conference date, trial brief due dates, etc.). Fulfilling the Court's obligation to ensure swift resolution of matters before it by setting a new trial date, *see* Fed. R. Civ. P. 1, 16, 26, did not, however, magically reset every deadline in the case previously outlined by the Court—dates that the parties were well aware of. Accordingly, it is clear that discovery was closed when the plaintiff filed her motion.

The plaintiff argues, alternatively, that even if discovery is closed, she has shown good cause to reopen discovery and compel production of the call data mentioned above. According to the plaintiff, good cause exists because the information requested is limited in scope, is "unquestionabl[y] useful[]…to the trier of fact," and the plaintiff's decision to not move to

compel the information prior to the class certification decision "reflected the nature and contours of an anticipated class-wide trial, which would have involved different issues and elements of proof than an individual trial."[9] (Docket #82-1 at 2).

"Reopening discovery after the discovery period has closed requires a showing of good cause." *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011). Motions to compel must be made in timely fashion, *see Norinder v. Fuentes*, 657 F.3d 526, 532 (7th Cir. 2011), and late-in-time motions to compel discovery will only be granted, similar to requests to reopen discovery, upon a showing of good cause for the delay. *See id.*; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002); *United States v. Garcia*, 528 F.3d 481, 484-85 (7th Cir. 2008).

"Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied." *Gucci*, 790 F. Supp. 2d at 140; *see Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (upholding denial of motion to compel as untimely where the plaintiff exhibited a "lack of diligence in pursuing the perceived inadequacies in discovery" and filed the motion to compel after discovery had closed and a motion for summary judgment was filed); *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) ("A party cannot ignore available discovery remedies for months and then, on the eve of trial, move the court for an order compelling production."); *Cont'l Indus., Inc. v. Integrated Logistics Solutions, LLC*, 211

---

[9]The plaintiff elaborates on this last point in her reply brief, describing a "two-phase trial plan" that involved focusing on class-wide issues first (phase one), before moving on to individual damages for each class member (phase two). (Docket #96 at 8). According to the plaintiff: "In light of this trial plan, Plaintiff reasonably focused her discovery efforts on discovery relevant to *class-wide* issues, not discovery that would be relevant during phase two." *Id.*

F.R.D. 442, 444 ("It is…critical that the movant not wait to file its motion until the eve of trial."); *Cf.* Fed. R. Civ. P. 26(b)(2)(C)(ii) *(*noting that a court must limit the extent or frequency of discovery if it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

The defendant argues that the plaintiff has not shown good cause to reopen discovery or compel production of the call log data (Docket #92 at 13-14), and the Court agrees. First, the plaintiff has shown a lack of diligence in pursuing this information, given that this case was filed in October of 2013 and trial was originally scheduled for December 1, 2014. And, even when the plaintiff filed her motion to compel, she exhibited a lack of diligence by not filing a Local Rule 7(h) expedited motion; indeed, had the Court allowed the regular briefing schedule to remain, resolution of the instant motion would have occurred just shortly before trial. In addition, it is clear that the plaintiff knew about the need for this information—likely since the beginning of the case—yet failed to act to enforce that need. This lack of diligence is fatal to the plaintiff's motion to compel. *See Packman*, 267 F.3d at 647;*Garcia*, 528 F.3d at 484-85; *Gucci*, 790 F. Supp. 2d at 139-40.

Second, the plaintiff's only argument for good cause appears to be that she took the wrong litigation tactic—namely, conducting this litigation on the assumption that class certification would be granted—and this should be excused by the Court. The Court disagrees. At the end of the day, Plaintiff's counsel has an obligation to the one client they actually represent, and should not subvert their duty to litigate the individual claim in the hopes that class certification will be granted. *Cf. Greisz*, 176 F.3d at 1013.

Third, the plaintiff has not argued that the call log data is indispensable to litigating her individual claim, or that a failure to compel production of this data would prejudice her. *See e360 Insight, Inc. v. Spamhaus*

*Project*, 658 F.3d 637, 644 (7th Cir. 2011) (noting that, on appeal, discovery rulings will not be overturned "'absent a clear showing that the denial of discovery resulted in actual and substantial prejudice.'") (quoting *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995)). Instead, she merely seeks the information "so that trial in this matter may proceed as efficiently and as expeditiously as possible." (Docket #82 at 2). And she clearly asserts that "[a]bsent such data, [she] can still prove the calls via her own testimony, as well as cellular telephone records obtained from cellular telephone carriers." (Docket #82-1 at 6). This too militates against granting the plaintiff's motion to compel.

In light of the foregoing, the Court is obliged to deny the plaintiff's motion to compel production of the call log data.

Accordingly,

IT IS ORDERED that the plaintiff's motion in limine (Docket #70) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the defendant's motion to enforce the protective order (Docket #83) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that the plaintiff's motion to compel production (Docket #82) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 21st day of May, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge